## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

CANDICE GULLATT                              :
                                             :
    Plaintiff,                       :
                                             :   CIVIL ACTION FILE NO.
    v.                               :   _____
                                             :
                                             :
HENRY COUNTY SCHOOL                          :
DISTRICT                                     :
                                             :
    Defendant                        :
_____               :

## COMPLAINT

Plaintiff Candice Gullatt ("Plaintiff" or "Gullatt") files her

Complaint against Defendant Henry County School District (d/b/a

Henry County Schools) (the "School District").

## NATURE OF THE ACTION

1.

This is an action for discrimination, failure to accommodate, and

retaliation under the Americans with Disabilities Act of 1990, as

amended, 42 U.S. §§ 12101 *et seq*. (ADA); the Rehabilitation Act of

1973, as amended, 29 U.S.C. §§'s 701 *et. seq.*; and interference and

retaliation under the Family and Medical Leave Act ("FMLA"), 29

U.S.C. § 2601 *et seq.*

## PARTIES

2.

Plaintiff Candice Gullatt is a U.S. citizen and resident of Henry

County in the State of Georgia.

3.

Defendant Henry County School District (referring to itself to the

public as Henry County Schools) is a school district operating under the

laws of Georgia with its principal address at 33 N. Zack Hinton

Parkway, McDonough, Georgia, 30253. The School District is subject to

actions under the ADA, the Rehabilitation Act, and FMLA, and can be

served with summons and complaint at the above address upon its

Superintendent, Mary Elizabeth Davis, PhD, who operates as its Chief

Executive Officer.

## JURISDICTION AND VENUE

### 4.

The claims brought in this lawsuit present federal questions and jurisdiction in this court is proper under 28 U.S.C. § 1331.

### 5.

Venue of this suit is proper in the Northern District of Georgia, Atlanta Division under 28 U.S.C. § 1391. Defendant's principal office address is in this division, so it resides within this division. The alleged unlawful acts against Plaintiff also occurred in this judicial district and division. In addition, Defendant operates in this judicial district and division.

### 6.

Plaintiff perfected a charge against the School District with the Equal Employment Opportunity Commission on June 15, 2021. The EEOC signed a Notice of Right to Sue on or about May 19, 2022, but it was not made available to Plaintiff until June 9, 2022.

## FACTUAL ALLEGATIONS

### 7.

In July 2000, the School District hired Candice Gullatt to work as a Guidance Counselor in the Union Grove Middle School it was opening that

Fall. Until 2021, her contract at Union Grove Middle School was renewed each year and she worked there without incident for over twenty years.

8.

Gullatt has long suffered from several disabilities that placed her at significantly greater health risk during the COVID-19 pandemic: chronic upper respiratory tract disease, chronic bronchitis, chronic asthma, and reflux. As a result of these disabilities, Plaintiff also suffers from the disability of obesity.

9.

During the time of the discriminatory and retaliatory events, Gullatt was the primary caregiver of her mother and daughter, who both also suffered from disabilities and serious medical conditions.

10.

At the beginning of 2020, Sean Thompson was named as the new Principal of Union Grove Middle School.

11.

Gullatt discussed her medical conditions with Thompson verbally and in writing. Thompson has also witnessed Gullatt having visible and audible symptoms of her medical conditions.

12.

Sometime in March 2020, Union Grove Middle School began having students, teachers, and staff attend school remotely due to the COVID-19 pandemic.

13.

During the time that students attended school remotely, Gullatt successfully performed all of her counseling duties remotely as well. With the use of remote technology, she was available for more flexible meetings with students and parents after school hours.

14.

During the Summer of 2020, Thompson began attempting to have Gullatt and other staff/teachers work onsite despite the students not attending school in person.

15.

Gullatt requested to continue working remotely and provided doctor's notes detailing her medical conditions to support her request.

16.

Thompson and/or Human Resources required Gullatt to provide doctor's notes around once a month.

17.

Gullatt's doctor indicated that wearing a mask for an extended period could increase her chances of suffering an asthma attack.

18.

On November 30, 2020, Thompson reported Gullatt and another Guidance Counselor at Union Grove Middle School for insubordination for allegedly not reporting for a work meeting even though they had both previously been granted permission to take sick leave to miss the meeting.

19.

Thompson did not report other employees who were also working remotely and did not attend the meeting in person for insubordination.

20.

After Thompson reported Gullatt and the other Guidance Counselor for insubordination, both complained to Human Resources employee, Cynthia McRae.

21.

Around this same time, Gullatt was notified that Thompson would no longer allow her the accommodation of performing her job remotely and she would be required to attend work in person.

22.

Gullatt continued to seek the virtual remote accommodation from Thompson and Human Resources.

23.

Thompson would not reply to Gullatt's communications seeking the remote work accommodation.

24.

Human Resources would not intervene to instruct Thompson to grant the accommodation but instead left it to his discretion as the principal.

25.

Meanwhile, employees in other schools and the County office were allowed the accommodation of working remotely even though students and other employees returned to in-person work.

26.

The School District communicated the precautions that were being taken to reduce the spread of COVID-19 transmission in school, but none of these measures would reduce the severe health risks to Gullatt or her family if she caught the virus. Wearing a mask for extended periods would also increase Gullatt's chances of having asthma attacks. Several School District employees contacted COVID-19 and several died as a result.

27.

Instead, Human Resources forced Gullatt to apply for FMLA leave, which was approved.

28.

Because the School District delayed returning students back to in-person classes due to continued health risks from the pandemic (despite the measures it claimed would reduce transmission risk), Gullatt was allowed to continue working remotely for a short period and her FMLA leave period was adjusted to expire on May 14, 2021 with a scheduled return to work date of May 17, 2021.

29.

While she was on FMLA leave, Thompson purposefully did not notify Gullatt that she needed to sign her renewal contract before the deadline. In contrast, Thompson did notify a Caucasian employee of her need to sign her renewal contract before the deadline. When Gullatt found out about the deadline for signing her renewal contract on or about 4:00 p.m. on a Friday afternoon, she had only until Monday to sign. If she had not met the deadline, she would have had to reapply for her position. Thompson would not respond to Gullatt about her contract until Human Resources personnel contacted him.

30.

Gullatt sought help from Human Resources to have the Restrictions Committee reconsider her accommodation request to work remotely.

31.

During this same time, Gullatt's mother's health took a substantial downturn due to cancer and diabetes, and she was only expected to live a matter of months.

32.

Because of her own disability and the need to care for her mother, Gullatt requested the accommodation of working remotely during the Summer when students were not even attending school.

33.

Thompson did not respond to or grant that request. He did not even respond to her emails or return her calls.

34.

Human Resources would not intervene to require Thompson to grant Gullatt the request of being able to work remotely during the Summer.

35.

Even though her twelve weeks of FMLA leave would expire on May 14, 2021, Human Resources suggested that Gullatt request leave by applying for FMLA again.

36.

Following that direction, Gullatt applied for FMLA leave again.

37.

The FMLA paperwork previously submitted by one of her physicians released her to return to work on May 14, 2021 with the following restriction: "She can conduct class virtually, attend meetings virtually."

38.

In the section on the Estimated Ending Date of Restrictions, the physician wrote: Not Given, will request medical update no later than June 30, 2021.

39.

Gullatt was given less than three-day's notice of a hearing with the School District's Restrictions Committee meeting to discuss her accommodation request to work remotely from home. This was not enough time to gather updated information from her doctors.

40.

Even though Thompson was the official who had denied Gullatt's accommodation request, the Restrictions Committee consisted of Thompson and some Human Resources personnel.

41.

On May 13, 2021, the School District wrote Gullatt a letter informing her that the Restrictions Committee determined that her request to work virtually through at least June 30, 2021 prohibited Gullatt from performing the essential functions of her job and stated that: "There is no work available to reasonably accommodate these restrictions therefore Approved Extended Leave (AEL) has been approved as means or reasonable accommodation through June 30, 2021."

42.

The Restrictions Committee further stated that her position may be filled with a permanent employee and that she would need to reapply for reinstatement once she received authorization allowing her to physically return to work.

43.

The Restrictions Committee also asked her to "provide a medical update from your next scheduled appointment with your treating physician

or sooner if you restriction/work status changes. A medical update addressing

your work status/restrictions must be received in the AEL Office no later

than June 30, 2021."

44.

The Restrictions Committee basically was nothing but a front to rubber

stamp the discrimination by Thompson.

45.

On May 18, 2021, Gullatt's physician amended her return-to-work

notice stating that she could work remotely, but that she was subject to that

restriction until at least January 3, 2022.

46.

Gullatt applied for a Guidance Counselor position at Dutchtown Middle

School, but Human Resources informed her that the principal there also

demanded that she be able to work in person.

47.

Gullatt twice applied for an open Guidance Counselor position at the

Impact Academy, which was the School District's virtual school.

48.

Most of the students attending the Impact Academy attend school remotely, but some are blended students attending school in-person twice a week.

49.

Despite the Impact Academy being a virtual school, the School District refused to hire Gullatt for the open position because the principal of the Impact Academy, Steve Thompson (not to be confused with Union Grove Principal Sean Thompson discussed above), maintained that in-person attendance at the physical Impact Academy building was an essential qualification for the position.

50.

Just as they had with Sean Thompson, Human Resources would not intervene to instruct or recommend Steve Thompson grant Gullatt the accommodation of performing the counseling job remotely, but rather left it up to his discretion.

51.

Due to the repeated discriminatory failure to accommodate her disabilities, Gullatt filled out a questionnaire with the EEOC and later perfected her Charge by signing it on June 15, 2021.

52.

On July 7, 2021, Grant McBride sent Gullatt an email with the subject

line: "Henry County School District – remote work." After a salutation and

brief greeting, the email stated:

> I'm an attorney for the Henry County School District. I wanted to
> reach out about your EEOC filing and your request to work remotely
> to see if we can get this resolved faster than going through the EEOC
> process.
>
> Do you have an attorney? If so, can you get me their contact
> information so that I may speak to them directly? If not, would you
> be free to talk sometime today or tomorrow? I can be reached at
> 678.###.#### or just let me know a good time and I can call you.
>
> Thanks, Grant.

53.

On July 12, 2021, McBride sent Gullatt another email stating: "Just

following up. If you could give me a ring or have your attorney call me, if you

have one, I would appreciate it. Thank you. Grant."

54.

At this time, Gullatt was attempting to secure an attorney, but had not

officially decided which firm to hire or executed a representation agreement.

She therefore contacted the EEOC to inquire about what she should do. The

EEOC representative suggested she call McBride to at least hear what he

was offering.

55.

Gullatt called McBride back on July 15, 2021.

56.

During the call, McBride offered Gullatt the Guidance Counselor position at the Impact Academy, but only gave her until Friday, July 16, 2021 to accept.

57.

Gullatt replied that she would not withdraw her EEOC Charge as a condition of accepting the position.

58.

McBride replied that if Gullatt was still proceeding with the EEOC Charge then the offer was off the table because of the cost to the County to defend against the charge and any lawsuit.

59.

Gullatt then replied that she would need to run this by an attorney.

60.

McBride then asked her if she had an attorney and Gullatt replied that she would now.

61.

On that same day, Jolie Hardin, the Executive Director of the School District's Human Resource Services, called Gullatt. Gullatt reported McBride's intimidating and retaliatory act.

62.

During that call, Hardin stated that she had informed the Principal of the Impact Academy, Steve Thompson, that he must allow Gullatt the accommodation to work virtually from home for her medical restrictions.

63.

Hardin reassured Gullatt that she would not have to dismiss her EEOC Charge as a condition of accepting the Guidance Counselor position at the Impact Academy.

64.

Hardin further stated that Steve Thompson would be promptly contacting her to welcome her to the Impact Academy.

65.

Gullatt called Hardin back later to inquire whether she needed to provide any further information from her doctor for this accommodation. Hardin replied that she did not need to do so at that time.

66.

When Gullatt did not hear from Steve Thompson, she emailed Hardin on July 16, 2021to document that she accepted the position.

67.

Human Resources informed Gullatt to wait to hear back from Steve Thompson on when she was to report to work.

68.

Gullatt did not hear back from Steve Thompson or anyone else from the Impact Academy about her start date so she called Human Resources several times to ask why she did not receive any communication.

69.

Within an hour of her last phone call to Human Resources to inquire about her start date, she finally received a call from the Impact Academy.

70.

After this call, Gullatt began performing the Guidance Counselor position at the Impact Academy.

72.

Despite the Impact Academy's failure to notify Gullatt of a start date, she noted that she had been docked pay when she received her paycheck.

73.

Gullatt contacted payroll to inquire about why her pay had been docked and was informed that she had not reported to work on the start date that was never communicated to her.

74.

Hardin and Sue Smith from Human Resources later called Gullatt to apologize for the docked pay and the rudeness of the payroll employee.

75.

The School District did eventually correct the docked pay and vacation days.

76.

Gullatt continues to successfully work remotely in the Guidance Counselor position at the Impact Academy.

77.

In that position, she services 346 students. None of these students attend the campus at all and Gullatt is able to perform all of her counseling duties with them remotely.

78.

Gullatt is assigned more students than any of the other counselors assigned to the Impact Academy and is also training another counselor.

78.

The period where Defendant discriminated and retaliated against Gullatt caused her financial hardship, emotional distress, and anxiety.

## COUNT ONE
## DISCRIMINATION UNDER THE ADA

79.

Gullatt has long suffered from several disabilities that placed her at significantly greater health risk during the COVID-19 pandemic: chronic upper respiratory tract disease, chronic bronchitis, chronic asthma, and reflux. As a result of these disabilities, Plaintiff also suffers from the disability of obesity.

80.

In addition, the symptoms of Gullatt's disabilities were exacerbated by the COVID-19 pandemic.

81.

Gullatt's chronic upper respiratory tract disease, chronic bronchitis, chronic asthma, and reflux substantially impairs her in the major life activity of breathing. In addition, these disabilities limit her respiratory bodily functions.

82.

The anxiety that has been exacerbated by the discriminatory and retaliatory acts also substantially impairs Gullatt in major life activities.

83.

Due to her seeking reasonable accommodations for her disability, Defendant was aware that she had a disability or a record of a disability.

84.

Defendant also regarded Plaintiff as disabled.

85.

Rather than grant Gullatt the reasonable accommodation of working remotely during the pandemic, Defendant terminated and replaced her in her Guidance Counselor position at Union Grove Middle School.

86.

Gullatt applied for other open Guidance Counselor positions (including positions at Defendant's virtual school), but was not hired for these positions because the principals at those schools refused to grant her the virtual accommodation and demanded that she be able to be physically present on site.

87.

While Defendant eventually provided Gullatt another position as an accommodation after she filed an EEOC Charge, she lost pay and had to pay out of pocket for some of her job benefits during the entire period she was forced to take leave.

88.

In addition, Defendant docked her pay even after she was hired for the Guidance Counselor position at the Impact Academy.

89.

Besides the financial impact, these discriminatory acts caused Gullatt emotional distress and increased anxiety.

90.

As a result of Defendant's discriminatory acts, Plaintiff is entitled to recover the relief requested below.

**COUNT TWO**
**FAILURE TO ACCOMMODATE UNDER THE ADA**

91.

Defendants violated the ADA by failing to grant Plaintiff a reasonable accommodation of allowing her to work remotely.

92.

Due to the above listed medical conditions and disabilities, Gullatt needed a reasonable accommodation to perform her job duties.

93.

Defendants cannot show that it would have been an undue burden to allow Plaintiff to work remotely at her original position at Union Grove Middle School or for any other open Guidance Counselor position.

94.

All the Guidance Counselor duties could be performed remotely or reasonably accommodated. Thus, in-person attendance was not an essential job duty for a Guidance Counselor at any school where Plaintiff worked or applied.

95.

While Defendant eventually provided Gullatt another position as an accommodation after she filed an EEOC Charge, she lost pay and had to pay out of pocket for some of her job benefits during the entire period she was forced to take leave.

96.

In addition, Defendant docked her pay even after she was hired for the Guidance Counselor position at the Impact Academy.

97.

Besides the financial impact, the failure to accommodate her caused Gullatt emotional distress.

98.

As a result of Defendant's failure to accommodate Gullatt, she is entitled to recover the relief requested below.

## COUNT THREE
## RETALIATION UNDER THE ADA

99.

Plaintiff engaged in protected activity under the ADA when she sought accommodations by requesting to perform her job, or other jobs she applied for, virtually.

100.

Rather than grant these accommodations, Defendant retaliated against her by forcing her to take FMLA leave and then not allowing her to return to work with accommodation.

101.

Gullatt also engaged in protected activity under the ADA when she filed an EEOC Charge.

102.

Defendant further retaliated against Gullatt when its attorney, Grant McBride, conditioned the accommodation of a new position on her withdrawing her EEOC Charge.

103.

Defendant further retaliated against Gullatt by docking her pay even after she was placed in a new position.

104.

The retaliatory acts caused Gullatt emotional distress.

105.

As a result of Defendant's retaliatory acts, Plaintiff is entitled to recover the relief requested below.

**COUNT FOUR**
**DISCRIMINATION UNDER THE REHABILITATION ACT OF**

106.

The School District is subject to the Rehabilitation Act because it receives funds from the federal government.

107.

Gullatt has long suffered from several disabilities that placed her at significantly greater health risk during the COVID-19 pandemic: chronic upper respiratory tract disease, chronic bronchitis, chronic asthma, and reflux. As a result of these disabilities, Plaintiff also suffers from the disability of obesity.

108.

In addition, the symptoms of Gullatt's disabilities were exacerbated by the COVID-19 pandemic.

109.

Gullatt's chronic upper respiratory tract disease, chronic bronchitis, chronic asthma, and reflux substantially impairs her in the major life activity of breathing. In addition, these disabilities limit her respiratory bodily functions.

110.

The anxiety that has been exacerbated by the discriminatory and retaliatory acts also substantially impairs

111.

Due to her seeking reasonable accommodations for her disability, Defendant was aware that she had a disability or a record of a disability.

112.

Defendant also regarded Plaintiff as disabled.

113.

Rather than grant Gullatt the reasonable accommodation of working remotely during the pandemic, Defendant terminated and replaced her in her Guidance Counselor position at Union Grove Middle School.

114.

Gullatt applied for other open Guidance Counselor positions, including positions at Defendant's virtual school, but was not hired for these positions because they demanded that she be able to be physically present.

115.

While Defendant eventually provided Gullatt another position as an accommodation after she filed an EEOC Charge, she lost pay and had to pay out of pocket for some of her job benefits.

116.

In addition, Defendant docked her pay even after she was hired for the Guidance Counselor position at the Impact Academy.

117.

Besides the financial impact, these discriminatory acts caused Gullatt emotional distress and anxiety.

118.

As a result of Defendant's discriminatory acts, Plaintiff is entitled to recover the relief requested below.

**COUNT FIVE**
**FAILURE TO ACCOMMODATE UNDER THE REHABILITATION ACT**

119.

The School District is subject to the Rehabilitation Act because it receives funds from the federal government.

120.

Defendants violated the Rehabilitation Act by failing to grant Plaintiff a reasonable accommodation of allowing her to work remotely.

121.

Due to the above listed medical conditions and disabilities, Gullatt needed a reasonable accommodation to perform her job duties.

122.

Defendants cannot show that it would have been an undue burden to allow Plaintiff to work remotely at her original position at Union Grove Middle School or for any other open Guidance Counselor position.

123.

All the Guidance Counselor duties could be performed remotely or reasonably accommodated. Thus, in-person attendance was not an essential job duty at any school that Plaintiff worked or applied.

124.

While Defendant eventually provided Gullatt another position as an accommodation after she filed an EEOC Charge, she lost pay and had to pay out of pocket for some of her job benefits during the entire period she was forced to take leave.

125.

In addition, Defendant docked her pay even after she was hired for the Guidance Counselor position at the Impact Academy.

126.

Besides the financial impact, the failure to accommodate her caused Gullatt emotional distress.

127.

As a result of Defendant's failure to accommodate Gullatt, she is entitled to recover the relief requested below.

## COUNT SIX
## RETALIATION UNDER THE REHABILITATION ACT

### 128.

The School District is subject to the Rehabilitation Act because it receives funds from the federal government.

### 129.

Plaintiff engaged in protected activity under the Rehabilitation Act when she sought accommodations by requesting to perform her job, or other jobs she applied for, virtually.

### 130.

Rather than grant these accommodations, Defendant retaliated against her by forcing her to take FMLA leave and then not allowing her to return to work with accommodation.

### 131.

Gullatt also engaged in protected activity under the Rehabilitation Act when she filed an EEOC Charge concerning disability discrimination, failure to accommodate, and retaliation.

132.

Defendant further retaliated against Gullatt when its attorney, Grant McBride, conditioned the accommodation of a new position on her withdrawing her EEOC Charge.

134.

Defendant further retaliated against Gullatt by docking her pay even after she was placed in a new position.

135.

As a result of Defendant's retaliatory acts, Plaintiff is entitled to recover the relief requested below.

## COUNT SEVEN
## INTERFERENCE WITH FMLA RIGHTS

136.

Defendant is an employer as defined by the FMLA who employed more than 50 or more employees within a 75-mile radius.

137.

Plaintiff was eligible for FMLA leave because she suffered from a serious medical condition (or her mother or daughter for which she was a caregiver had a serious medical condition) and had worked full-time for Defendant for over a year.

138.

Rather than grant Gullatt the accommodation of performing her work remotely, Defendant forced Plaintiff to take FMLA leave.

139.

When her FMLA leave expired, rather than immediately reinstate Plaintiff to her position, or an alternative similar position, despite her being cleared to return to remote work, Defendants placed Plaintiff on unpaid leave for several months.

140.

When Gullatt needed FMLA leave to take care of a family member with a serious medical condition, Defendant denied this leave.

141.

Defendant was motivated by an intent to interfere with Plaintiff's FMLA rights.

142.

As a result of Defendant's interference with Plaintiff's FMLA leave and right to reinstatement, Plaintiff is entitled to recover the relief requested below.

## COUNT EIGHT
## RETALIATION UNDER THE FMLA

### 143.

Defendant replaced Plaintiff during the time it forced her on FMLA leave or shortly thereafter.

### 144.

Defendant failed to return Plaintiff to her position or another similar position after her FMLA leave expired despite her being cleared to return to remote work.

### 145.

By taking FMLA leave and seeking FMLA leave to care for a covered family member, Plaintiff engaged in protected activity under the FMLA.

### 146.

Defendant's adverse actions against Plaintiff were motivated by an intent to retaliate against her for taking and seeking FMLA leave.

### 147.

As a result of Defendant's retaliation against Plaintiff for taking and seeking leave protected by the FMLA, she is entitled to recover the relief requested below.

WHEREFORE, Plaintiff prays:

a.      That Summons issue requiring Defendant to answer the Complaint within the time provided by law;

b.      That Plaintiff be awarded a declaratory judgment that Defendant violated the ADA, Rehabilitation Act, and FMLA;

c.      That Plaintiff recover from Defendant back pay and benefits with pre-judgment interest;

d.      That Plaintiff recover compensatory damages against Defendant in an amount to be determined by a jury;

e.      That Plaintiff recover liquidated damage against Defendant in an amount equal to any amount awarded for back pay and benefits;

f.      That the Court order injunctive or equitable relief to ensure a reasonable accommodation and prohibit retaliation against Plaintiff;

g.      That Plaintiff recover attorney's fees and costs of litigation under the ADA, Rehabilitation Act, FMLA, and any other applicable federal law;

h.      That the Court award Plaintiff any other or further relief as it deems necessary and proper, or equitable and just.

**PLAINTIFF DEMANDS A TRIAL BY JURY ON ALL COUNTS**

Respectfully submitted this 15th day of August, 2022.

T. Robert Reid, LLC

<u>s/ Tilden Robert Reid, II</u>
T. Robert Reid
Ga. Bar No. 600138

1030 Woodstock Road
Suite 3112
Roswell, Georgia  30075
Telephone (678) 743-1064
Facsimile (404) 549-4136
robreidattorney@gmail.com

Attorney for Plaintiff